# Martin, Appellant, *v.* Philadelphia and Reading Railway Company.

*Negligence—Railroads—Government mail agent.*

In an action by a government mail agent against a railroad company to recover damages for personal injuries by being thrown out of the open door of a mail car, a nonsuit is properly entered, where it appears that prior to the accident plaintiff attempted to adjust a safety bar across the open doorway, but found it fast in its socket so that he could not move it with his hands, or kick it loose, but could have moved it with an instru-

ment, but made no attempt to do so, and that he could have performed his work if he had closed the lower section of the door.

Argued June 3, 1901. Appeal, No. 16, May T., 1901, by plaintiff, from order of C. P. Dauphin Co., March T., 1899, No. 57, refusing to take off nonsuit in case of Abram E. Martin v. Philadelphia and Reading Railway Company. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Trespass for personal injuries.

The facts appear by the opinion of Weiss, J., which was as follows :

The plaintiff was a government mail agent on November 7, 1898.

His duty was to distribute mail delivered to him on a car or compartment thereof furnished by the defendant company, and put it in pouches for delivery at stations and other designated places along the line of his route.

At regular stopping places he hands the mail pouch to a person authorized to receive it, and in turn has another pouch from that place handed to him, which he also assorts and distributes. Elsewhere the mail is taken off by a device or catching apparatus from a post or crane to which the pouch is hung, and the pouch for that place is thrown out while the car is in motion. This apparatus is adjusted to an opening, or door, on the outside of the car and usually on the doors of both sides of the car. Towards the floor of the car from this apparatus, and a short distance below it, is a device known as a safety bar or rod.

His run on that day, and it was the first on the route, was west from Harrisburg to Shippensburg or Chambersburg. The first stopping place was Bowmansdale, about eight or ten miles west of Harrisburg, where he received and delivered mail.

His first catching station was at Brandtsville, several miles west of Bowmansdale. Between these stations the accident happened. The designs or contrivances for the purposes stated may be briefly described :

About three feet upward from the floor of the mail car at the door is a straight rod made of iron about an inch in di-

ameter, which works on a hinge at one end, and at the other side fits into a groove or an opening cut into the door frame. At the unhinged end the rod is bent, and the tapered end fits into a socket. It hangs in a perpendicular position when not in use, and is spanned across the door space when used.

It is known as a safety rod, and each side of the mail car or compartment has such an appliance.

About three inches above this safety rod is located the horizontal rod of the catching apparatus. The contrivance consists of an iron rod which is placed horizontally across the door space, and extends beyond the brackets or fastenings, and through ear holes at one end an inch or a little more, and at the other end about a foot.

Near the short extended end on the upper side of this rod is a handle; to the opposite or nether side of the rod and directly underneath, is attached and secured an iron rod or bar by an angular iron casting, which at the point of attachment bends and forms an angle to receive the mail pouch and is strongly secured to resist the impact, and which itself stands at an angle of about forty-five degrees to the horizontal rod. The handle is drawn inward, which throws the catcher bar on arm outwards and on a line with the mail pouch hung to the crane and fixtures.

The catching appliance is reversible, so that the pouches may be picked off whichever way the train is running.

There is a hole at the short extended end through the straight or horizontal rod of the catching apparatus, through which an iron pin may be put to keep it securely fastened, which is sometimes and perhaps usually retained in place by a chain, and sometimes by a twine rope.

This apparatus is reversed by pulling the straight rod in a horizontal direction inwards from the short extended end until it is out of the groove, or ear hole, then pulling in the same direction opposite until it leaves the other groove, or ear hole, and the appliance is then adjusted for ready use.

The car is also fitted with a double door, swinging on hinges inward, the lower part or section of which may be closed, with the upper part or section open, and the two sections are about of equal length. The top or upper line of the lower section

is on a line about midway between the safety rod and the horizontal bar of the catching apparatus when in place.

The plaintiff reached the car about fifteen minutes before leaving time of the train, and after distributing part of the mail, he noticed that the safety bar was not in its proper position. Just as the train was started he went to the car door to release the safety bar and place it aright, but found it so fast in the socket and so close to the side, that he could not pull it away, nor kick it away, and he had and looked for nothing with which to pry it away. The bar itself was not defective.

The catching apparatus on the side he was working, was in proper position. He made no examination of the catcher before he started, to see if there was a pin to hold it in the casting or ear hole, and did not look for any pin.

The course of the trial indicated that there was no pin either attached to a chain or in the socket. The plaintiff was stooping down quite low at a place beyond Bowmansdale, and before reaching Brantsville crane, to select the proper pouch out of two, for delivery out at the latter place, the train rounded a curve and its movement threw him towards and out of the door. He grasped the catcher bar, which swung outward and he passed underneath it.

While he was thus suspended and the train running rapidly, the catching apparatus gave way, in consequence of which he lost his grip, fell, was rendered unconscious and hurt.

The plaintiff does not remember whether the lower part or section of the door was closed between Harrisburg and Bowmansdale, but is positive that the door was open after he left Bowmansdale. He did not close the door because the work he had to do he " didn't do with the door closed," and adds that he couldn't throw the pouch and catch another with it closed.

As this was his first working run over this road, he was not familiar with the stations, though he could see out and look for the catching cranes with the lower section of the door closed; and as the accident happened between stations and not at a catching station nothing can be predicated on his behalf, nor against the defendant by reason of his want of familiarity with the road stations and postal cranes.

Now it is apparent that he could exchange mail at a crane

with the lower section of the door closed and the upper half open, though it must be admitted that it would not be as convenient.

It was the duty of the plaintiff to take reasonable care and exercise reasonable caution against danger during the time he was on the road, and it was the duty of the defendant to furnish appliances which were reasonably safe and in common use. Sustaining the relation of servant to the company, he assumed all risks ordinarily incident to the employment.

Being an employee the fact that an accident happened does not raise a presumption that the company was negligent, as it would in the case of a passenger or a stranger. He must show affirmatively some negligent act, and trace the injury to that act as the proximate cause of it, before a recovery can be had.

The defect in the safety rod complained of was that the tapered end fitted so tightly in the socket on the side of the hinge, that he could not dislodge it therefrom with his hands and probably not by kicking against it, and had nothing at hand to displace it, and consequently could not place it across the doorway in the position it was intended to be used.

It does not appear that the car inspector was not skilful or competent, nor that the company knew that the safety rod could not readily be adjusted in position for use.

It could be dislodged and put into position by prying it away but he had nothing in his possession there that he knew of with which to do it, and by reason of the train having started, could make no report to any one who could release it, and he went back to his work "not thinking that anything of this kind would happen."

It does not impress one as a defect, and it was surely the duty of the plaintiff to make search for some instrument with which to dislodge the rod from the socket, which may have become fastened in consequence of its infrequent use, or other cause, quite as likely as through defective construction. It is not suggestive of a condition which would charge knowledge, or its ready acquisition, upon the defendant. The rod itself was not defective and there is nothing to show that the socket was not properly constructed. It fitted in quite tightly, and usually had to be dislodged with some instrument, for which

the mail agent ought to have made search even amidst other important work.

To call, and say that the tapering end of a rod which sticks fast in a socket, so however that it may be removed by any ordinary instrument, a defect of construction or a failure to furnish and maintain a suitable appliance, does not flow freely or naturally from the pen; nor does the mind spontaneously assent to the proposition that the injury which befell the plaintiff when he bent over low at a time and place where a curve in the road caused a lurch to the train, is traceable to the difficulty in removing or adjusting the safety rod, or that the accident would not have happened if the rod had been in place. The plaintiff must show by something more than probability or conjecture that the injury resulted from the fact that he could not readily dislodge the bar and therefore not span it across the door, before he can ask a jury to say whether it did or not. Assuming, as he did, the ordinary risks of the employment, and being obliged to do more than make out a mere prima facie case, and failing, as we think, to show that the injury was linked or interwoven with the tight fitting rod, its detachment and adjustment, there was not sufficient proof to carry the case to the jury, and there was no error in this behalf in not submitting the question of liability to its deliberations: Mensch v. Penna. Railroad Co., 150 Pa. 598; P. & R. R. R. Co. v. Hughes, 119 Pa. 301; Mixter v. Imperial Coal Co., 152 Pa. 395.

Nor can the plaintiff, in our opinion, prosper better in respect to the condition and attendant circumstances connected with the catching apparatus.

There was no pin in the hole of the end of the horizontal bar pointing properly east—the train going west—to secure the rod in place. The plaintiff saw that the appliance was in proper position for his first catch at Brandtsville, but he did not look for the iron pin, or its attachment, which it is usual to have on new or repaired cars when they come out of the shops.

One witness says there was no hole in the rod, but the case was treated throughout as though the pin and chain only were lacking.

It could not reasonably be expected that the company, by which is meant its principal officers, should be charged with the duty of looking after all or any details of construction or ap-

pliance. That would naturally and necessarily be relegated to inspectors.

If there was an omission to inspect, or an inspection had and not reported to the proper officer, the act was that of a fellow servant, and no recovery can be had. Besides it would not be a hardship to require of the plaintiff that he improvise a pin, or fastening, if an examination showed it lacking, out of material such as rope, with which a mail car is almost necessarily supplied.

In P. & R. R. R. Co. v. Hughes, 119 Pa. 314, a brakeman and a car inspector are said to be " in the same circle of appointment," and in Penna. Railroad Co. v. Price, 96 Pa. 265, a postal route agent is placed upon the same plane as the employees of the company. In Foreman v. Penna. Railroad Co., 195 Pa. 499, a brakeman negligently left open a switch, whereby the train, aboard which the plaintiff was engaged as postal clerk in the performance of his duties at the time of the accident, was derailed, ran into a siding and collided with a loaded car, and the plaintiff was caused and suffered permanent injury. It was held that the plaintiff was not a passenger, and the verdict directed by the court below to be entered for the defendant was sustained : Price v. Penna. Railroad Co., 96 Pa. 256.

It may well be that the lilt of the train would have thrown him out of the car if the safety rod had been in place, for the reason that he was bending low at the time of the accident, and the rod in position would be at least three feet upward from the doorsill. The jury would have to guess whether he would or would not, and before the plaintiff can thrive he must show something more than guess proof.

To move the horizontal bar of the catching apparatus out of the ear hole, it must needs be pulled in the direction the train was moving. It could be done in no other way. The weight of a body suspended from the catcher bar necessarily had a tendency to keep the appliance in place, because the swinging body—itself in an angular position, notwithstanding the effort of the plaintiff to raise himself into the car—would draw in a direction opposite from that of the moving train.

The handle, the catching bar, and the angular bracket to which they are fastened are all at the end of the horizontal bar

where the iron pin ought to have been, only on the inside of the ear hole, and in themselves are of considerable weight, so that it is not likely that the motion of the car would jar the rod out of place. It is not improbable that Shaver, the mail clerk, whose place the plaintiff took on the day stated, did not insert the end properly through the ear hole the night before.

But whatever the cause of the disjuncture was, the injury is not shown to be caused by, nor is it linked or connected with, the absence of the iron pin.

One thing is certain. If the lower section of the door had been closed, the accident could not have happened. The upper line of this half of the door is about two inches downward from the horizontal bar of the catching appliance as shown by the model at the trial, and it is apparent from an inspection that the plaintiff could have caught mail with that part of the door closed. It is manifest that he could also have delivered pouches out. It is also true that exchanging mail pouches would thereby be rendered less convenient. But provision against danger was paramount to convenience, especially as the train was running fast and was not at or immediately near a postal crane at the time the serious injury happened the plaintiff.

We are obliged to deny the motion of the plaintiff for leave to take off the compulsory nonsuit and it is accordingly refused and overruled.

*Error assigned* was refusal to take off nonsuit.

*William M. Middleton*, for appellant.

*John T Brady*, for appellee.

PER CURIAM, October 11, 1901:

This was an action of trespass in which the plaintiff sought to recover damages for an injury he alleged he received while in the service of the defendant company and through its negligence. Having presented on the trial all of the testimony which he deemed important and pertinent, he rested his case, and he was then met by a motion from the defendant's counsel for a nonsuit which the court below allowed, and which upon careful consideration he refused to take off. The only ques-

tion presented for consideration on this appeal was whether there was error in the refusal aforesaid.

We have carefully examined and considered all the testimony presented and relied on by the plaintiff in connection with the elaborate and satisfactory opinion of the court below, and our conclusion is that no error was committed in the allowance of the nonsuit or the refusal to take it off.

Judgment affirmed.